UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ARRELLO BARNES,

                        Plaintiff,

        v.                               DECISION AND ORDER

                                           06-CV-6363L

ROBERT HENDERSON,
JOHN W. BURGE,

                        Defendants.
_____

Plaintiff Arrello Barnes, appearing *pro se*, commenced this action under 42 U.S.C. § 1983. Plaintiff, an inmate in the New York State Department of Correctional Services ("DOCS"), alleges that defendants Robert Henderson and John Burge, who at all relevant times were officials or employees of DOCS, violated his constitutional right to procedural due process in connection with a disciplinary hearing held at Elmira Correctional Facility ("Elmira") in April 2006.

Defendants have moved for summary judgment pursuant to Rule 56(e) of the Federal Rules of Civil Procedure. Plaintiff has cross-moved for summary judgment in his favor. For the reasons that follow, defendants' motion is granted, plaintiff's motion is denied, and the complaint is dismissed.

**FACTUAL BACKGROUND**

The relevant facts are largely undisputed. On March 24, 2006, plaintiff was involved in a fight with some other inmates at Elmira. As a result of this fight, plaintiff was issued a misbehavior report charging him with several disciplinary infractions.

A Tier III disciplinary hearing on those charges was held before defendant Deputy Superintendent Robert Henderson on March 28, 2006. At the hearing, plaintiff pleaded guilty to a charge of fighting, and not guilty to charges of violent conduct and creating a disturbance.

Correction Officer G. Davis testified at the hearing that he observed plaintiff throwing punches during the March 24 fight. Three other officers also testified, but they were essentially unable to say whether plaintiff had been fighting or not. Henderson denied plaintiff's requests to call several other witnesses, on various grounds.

At the conclusion of the hearing, Henderson found plaintiff guilty on all charges, and sentenced him to eighteen months' confinement in the Special Housing Unit ("SHU") and loss of good time. Plaintiff sought discretionary review by Superintendent John W. Burge, who issued a memorandum on May 1, 2006, stating that he "f[ou]nd no reason to modify the disposition rendered." Dkt. #1-2 at 17.

On administrative appeal, and on June 8, 2006 Special Housing/Inmate Disciplinary Program Director Donald Selsky reversed the finding on the charges of violent conduct and creating a disturbance. Selsky stated that the reason for his decision was the "failure to interview requested witnesses who could have provided relevant testimony on [those] dismissed charges." Dkt. #28 at 82. Selsky also reduced plaintiff's sentence to six months in SHU and loss of six months' good time, based on plaintiff's conviction on the charge of fighting, to which he had

pleaded guilty. At the time of Selsky's decision, plaintiff had not yet served six months of his SHU sentence. Plaintiff did serve that six-month sentence, but no additional sentence on the charges stemming from the March 24, 2006 fight.

Plaintiff filed the complaint in this action on July 20, 2006, asserting various constitutional claims against Henderson, Burge, Selsky, and DOCS Commissioner Glenn Goord. By Decision and Order entered on June 19, 2007 (Dkt. #14), the Court dismissed all but plaintiff's due process claims against Henderson and Burge. The gist of plaintiff's remaining claims is that Henderson improperly delayed or extended the hearing, in violation of DOCS regulations, that Henderson wrongfully denied plaintiff's requests to call certain witnesses, and that Burge failed to correct these errors or violations on appeal.

## DISCUSSION

### I. General Principles

#### A. Summary Judgment

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir. 2000) (quotations omitted). Where, as here, the plaintiff is proceeding *pro se*, the court must "read the pleadings ... liberally and interpret them to raise the strongest arguments that they suggest." *Corcoran v. New York Power Auth.*, 202 F.3d 530, 536 (2d Cir. 1999) (quotations omitted). "Nonetheless, '[p]roceeding *pro se* does not

-3-

otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment.'" *Rodriguez v. Ames*, 224 F.Supp.2d 555, 559 (W.D.N.Y. 2002) (quoting *Rodriguez v. Hahn*, 209 F.Supp.2d 344, 348 (S.D.N.Y. 2002)).

**B. Procedural Due Process Claims**

To show a violation of his procedural due process rights, an inmate must establish interference with a protected liberty interest by satisfying a two-part test: (1) the confinement or restraint must create an "atypical and significant hardship in relation to the ordinary incidents of prison life," *Sandin v. Conner*, 515 U.S. 472, 484 (1995); and (2) the state must have granted a liberty interest by statute or regulation to be free from that confinement or restraint. *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996) (citing *Sandin*, 515 U.S. at 484).

Analysis of an inmate's claim that he was denied procedural due process in connection with disciplinary or similar proceedings thus "proceeds with two questions. '[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) (quoting *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

With respect to the latter inquiry, "due process requires that a prisoner be given specific factual notice of the charged misbehavior for which he faces discipline, a summary of the substance of any adverse evidence reviewed ex parte by the hearing officer, and a statement of reasons for the discipline imposed." *United States v. Abuhamra*, 389 F.3d 309, 326 (2d Cir.

2004) (citing *Sira v. Morton*, 380 F.3d 57, 70, 74-76 (2d Cir. 2004)). The Court of Appeals for the Second Circuit has described these requirements as "minimal." *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)).

Due process for an inmate disciplinary hearing does not encompass a right to a speedy hearing. The Second Circuit has held that the lack of a speedy hearing alone "would not be enough generally to establish a constitutional claim." *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). In addition, a violation of New York State regulations concerning prison disciplinary hearings does not in itself establish a due process violation. *Bolden Alston*, 810 F.2d 353, 358 (2d Cir. 1987).

Although a New York inmate has a due process right to call witnesses, *see* N.Y.C.R.R. § 254.5(b), that right is not absolute. *See Ponte v. Real*, 471 U.S. 491, 495 (1985); *Wolff*, 418 U.S. at 566. "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority ... ." *Ponte*, 471 U.S. at 496 (quoting *Wolff*, 418 U.S. at 566). A hearing officer may also refuse to call a witness "on the basis of irrelevance or lack of necessity." *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991); *see also Scott v. Kelly*, 962 F.2d 145, 146-47 (2d Cir. 1992) ("It is well settled that an official may refuse to call witnesses as long as the refusal is justifiable").

Prison hearing officers, then, have the discretion to keep hearings withing reasonable limits, and included within that discretion is the authority to refuse to call witnesses whose testimony the prison official reasonably regards as duplicative or non-probative. *Russell v. Selsky*, 35 F.3d 55, 55-59 (2d Cir. 1994).

In addition, "prison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify ... ." *Ponte*, 471 U.S. at 497. They need not give a detailed explanation, however, and "may do so ... by making the explanation a part of the 'administrative record' in the disciplinary proceeding ... ." *Id.*

If a procedural due process violation has occurred in connection with a disciplinary hearing, the Second Circuit has held that a reversal on administrative appeal will not cure the violation if the reversal occurs after the inmate has begun serving a punitive sentence on the disciplinary charges. *Walker v. Bates*, 23 F.3d 652, 658-59 (2d Cir. 1994), *cert. denied*, 515 U.S. 1157 (1995); *accord Mays v. Mahoney*, 23 F.3d 660 (2d Cir. 1994), *cert. denied*, 515 U.S. 1157 (1995). When such a reversal occurs *before* the inmate has begun serving his disciplinary sentence, however, the inmate has been afforded all the process to which he is constitutionally entitled. *Pacheco v. Vanwyk*, No. 94-CV-456, 1997 WL 642540, at *2 (N.D.N.Y. Oct. 15, 1997) (citing *Walker*, 23 F.3d at 657-58); *Breazil v. Bartlett*, 998 F.Supp. 236, 244 (W.D.N.Y. 1997). *See also Young v. Hoffman*, 970 F.2d 1154, 1156 (2d Cir. 1992) (declining to address whether prisoner suffered any denial of due process, since prisoner's administrative appeal resulted in a reversal of his disciplinary sentence before he served any of the sentence, thus curing any procedural defect), *cert. denied*, 510 U.S. 837 (1993); *Wycoff v. Nichols*, 94 F.3d 1187, 1189 (8th Cir. 1996) (rehearing and reversal cured alleged due process violation); *Morissette v. Peters*, 45 F.3d 1119, 1122 (7th Cir. 1995) (no denial of due process if the error of which inmate complains is corrected through administrative appeal process); *Torricellas v. Poole*, 954 F.Supp. 1405, 1414 (C.D. Ca. 1996) ("where a procedural error has been corrected in the administrative process ... there has been no compensable due process violation").

Prison officials may also be entitled to qualified immunity for due process violations. "The doctrine of qualified immunity shields government officials from liability for damages resulting from the performance of discretionary official functions if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Turner v. Grant*, No. 98-CV-706, 2000 U.S. Dist. Lexis 4305, at *19 (W.D.N.Y. 2000) (quoting *Ayers v. Ryan*, 152 F.3d 77, 82 (2d Cir. 1998)). Summary judgment may be granted on this ground if the defendant can show that the asserted right was not clearly established at the time of the relevant events, or that it was nonetheless objectively reasonable for the official to believe that his conduct did not violate the asserted right. *Rodriguez v. Phillips*, 66 F.3d 470, 475 (2d Cir. 1995).

**III. Application to this Case**

In the instant action, defendants are entitled to summary judgment dismissing plaintiff's claims on a number of grounds. First and foremost, any possible procedural defects were cured through the administrative appeal process before plaintiff began serving any punitive sentence as a result of such defects. Plaintiff pleaded guilty to the charge of fighting, for which he was eventually sentenced to six months in SHU. As plaintiff had not yet served six months in SHU at the time that the convictions on the other two charges were reversed on administrative appeal, he did not suffer any additional negative consequences as a result of those other convictions. Thus, there has been no cognizable due process violation. *Pacheco*, 1997 WL 642540, at *2.

Even if plaintiff had not obtained an administrative reversal prior to serving any time on the violent conduct and creating-a-disturbance charges, plaintiff's claims would still be subject to

dismissal. First, as described above, an alleged failure to provide a speedy hearing under *state* regulations is not enough to establish a *federal* due process violation. *See Allah v. Greis*, No. 05-CV-865, 2007 WL 2710793, at *7 (W.D.N.Y. Sept. 13, 2007) ("it is well established that a violation of 7 N.Y.C.R.R. § 251-5.1 [which generally requires that hearing be held within seven days of inmate's confinement on disciplinary charges], in and of itself, is not enough to establish a federal constitutional claim") (internal quotation marks omitted); *see*, *e.g.*, *Donato v. Phillips*, No. 9:04-cv-1160, 2007 WL 168238, at *6 (N.D.N.Y. Jan. 18, 2007) ("Plaintiff's hearing began nine days after he began SHU confinement, which is within the time period courts have held to be reasonable"). The delays here were relatively modest and do not give rise to a constitutional claim.

Although on administrative appeal Selsky concluded that Henderson erred in not calling certain witnesses that had been requested by plaintiff, that likewise will not support a due process claim against Henderson. Again, even if a violation occurred, plaintiff suffered no harm as a result, since he served no time on the charges of which he was found guilty by Henderson.

In addition, Henderson would be entitled to qualified immunity from liability on this claim, as it was objectively reasonable for him to believe that his conduct did not violate plaintiff's rights. Although the law was clearly established at the time of the hearing that an inmate has a right to call witnesses, it was equally well established that the inmate's right to do so is limited, and that a hearing officer has discretion to deny an inmate's witness requests on a number of grounds. Even if Henderson erred in denying plaintiff's requests, then, it was reasonable for him to believe that he could validly do so on the ground that the testimony of the witnesses in question was unlikely to be relevant or probative.

Plaintiff also appears to contend that a video recording of the underlying incident was not produced at the hearing. There is no evidence that such a recording existed, however, nor is there any basis on which to conclude that, had such a recording been produced, it would have been likely to change the result of the hearing, particularly in light of plaintiff's guilty plea to the fighting charge.

Plaintiff's claim against Burge requires little comment. It does not appear that Burge even had the authority to overturn Henderson's findings of guilt, but that at most, he could have reduced the penalty imposed on plaintiff. *See* 7 N.Y.C.R.R. §§ 252.7, 253.9, 254.9 (all providing with respect to discretionary review by superintendent that "[a]t any time during which a penalty imposed pursuant to a superintendent's hearing is in effect, the superintendent may reduce the penalty").[1] In any event, it was objectively reasonable for Burge to deny plaintiff's requests for discretionary relief, and Burge would also be entitled to qualified immunity.

**CONCLUSION**

Defendants' motion for summary judgment (Dkt. #26) is granted, and the complaint is dismissed. Plaintiff's cross-motion for summary judgment (Dkt. #45) is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       June 23, 2009.

---

[1] "In the New York Prison system, Tier III disciplinary hearings [are] also known as Superintendent's hearings ... ." *Grillo v. Coughlin*, 31 F.3d 53, 54 n.2 (1994).